Judges Cabell, Brooke and Roane,
concurred in the following opinion, which was delivered by judge Roane, as the opirtion of the court:
This is an action of debt on a note, brought in the Superior Court, by the appellees against the appellant. *35 The declaration states that the note was made on the 21st of June, 17i>6, at Alexandria, within the county of Fr¡ d-crick, by which the appellant promised to pay on demand the sum of g 284. The note is copied into the record, and also has several credits endorssd on it. Issue was joined on the plea of nil debet. Afterwards, the defendant came, into court in his proper person, and acknowledged the plaintiff’s action for g 284, with interest from the 21st of June, 1796; on which acknowledgment a judgment was rendered for S 284, with interest, at the rale of 6 per centum per annum, fro»» the 21st of June, 171)6, nil paid. The confession, on winch this judgment was founded, left no fact to he decided on as to the amount of the debt acknowledged, and no computation or calculation to be, made by the clerk. It specified g 284 as the principal sum for which the judgment was to be rendered, and with regard to the interest, it did not agree that ar.i interest of 6 per cent, was to be allowed, but only that interest was to he computed on the said sum ; that is, as we understand it, the interest which is allowed by law. ^ hat interest is allowable upon any contract, is always a question of law; and it is sometimes an intricate question, as it respects the time, or the place of the contract. In this case it was undoubtedly a question of law, as both the acknowledgment of the appellant and the declaration referred to by it, shewed that the contract arose on the 21st of June, 1796; after which time, the rate of interest was altered by a general law, from 5 to 6 per centum per annum. When, therefore, flic question of interest was submitted in the general terms stated in the confession, that confession combined with the intermediate alteration of the law as aforesaid, submitted, in effect, to the court, the question of interest, as it were by a special verdict. If was submitted to be decided, whether the law of the time of die contract, or that of the date of the judgment, -n relation to the rate of the interest, was to govern; or in other words, whether an interest oí 5 or 6 per cent, per annum *36 was to he allowed. The court decided in favor of the latter, and we are all ofopinion that that decision was erroneous. If this.question thus decided, be a legal questian, and as such, proper for the decision of the court, rather than of its subordinate officer the clerk, it is not the less submitted to it by the general acknowledgment now before us, than if it had in so many words stated that it was submitted to the court to be by it decided. It stands so submitted under the principle ad questiones legis respondent fullees. This maxim supplies the place of a special reference to the court in this particular. This question of law was, therefore, referred to the court, and was decided on by the court, and if so, the case of Gordon vs. Framer and Cosby, tells us that it could only be corrected by a superior tribunal. Independent of the terms of the judgment before us, whereby it is considered that an interest of '6 per centum per annum is to be paid, that question was surely decided on by the court which alone was submitted to it, and as to which the materials for a just decision were furnished by the declaration referred to, and by the confession. That question was not decided on by the clerk, which was not submitted to his judgment, and which involved a legal enquiry proper for the adjudication of the court. Those only are clerical errors which are made by the clerk, which depend only upon a comparison and calculation to be made by him, and may be safely reformed by reference to other statements contained in the proceedings. That was the case, in Gordon vs. Franzier and Cosby, even in relation to the endorsements as to the Hobbshole tobacco. In the case before us, there is no other part of the record to which you can refer, as in that case, to reduce the interest in question from 6 per cent, to 5. You can only so reduce it, by referring to the principles of law, in relation to the time of the contract.
The case of Brooke vs. Roane,(g) is, in principle, decisive of the case before us. In that case, judgment was *37 rendered on a forthcoming bond taken after the date of ” w # the act changing the interest, upon a contract existing before, and the judgment was for an interest of 6 per'cent, In that case, though rendered upon notice, the court had as little to do with specifying the rate of the interest, as in the case before us. In both cases it was intrusted to the clerk: yet in that case, this was held to be the act of the court, and was corrected here, upon an appeal. It was so corrected on the ground that the forthcoming bond made no new contract, and that, consequently, the former rate of interest should prevail. On the same ground, this court should now hold that the error in question was the error of the court: that this court has consequently the power to correct, and that the court below having erred in relation to the law of interest, its judgment ought to be reversed. This is a fortiori i lie case, in the present instance, in which the question of interest is submitted to the court, as we have endeavoured to shew, as it were by a special verdict.
in construing the 108th section of the act of Jeofails,(h) in relation to the case before us, we can never forget the great land mark before mentioned, that as to questions of law, the courts are to decide them. This principle, standing alone, would go far to restrict the words “ mistake, miscalculation or misrecital” therein contained, to the standard before mentioned. But it does not stand alone. By the same section, a reference is made to other parts of the record by which these mistakes may he safely amended. These last circumstances, coming in aid of the principle aforesaid, turn the scale against the construction contended for by the appellees, in the present instance. There is no other part of this record which contains any statement of fact, by which the amendment in question can safely he made. If a correction is to be made, it can only be made by one judicial tribunal acting upon the mistaken judgment of another. Although the correction is to he *38 made, under this section, by the same judge in vacation, it is only as to such corrections as can be safely made by him, by referring to other statements in the record. It was never intended to make him an appellate court over liitnself. It was never intended that his decisions made in open court, and upon argument, should be reversed by himself, at his own chambers, in vacation. Quoad questions of law at least, the revising courts should have at least as many lights as those courts whose judgments are to be considered.
This construction-of that section is confirmed by the section immediately following. By that section (109th) the judgments are to be corrected in two classes of cases only, and those are only where, by a mere comparison of different parts of the record, the corrections can be safely made. One of these is by pruning down the sum found by the verdict, to the standard of that demanded by the declaration. The ideas we have .stated in relation to the 108th section are thus confirmed and acted upon in the 109th. They are all to be taken in exclusion of those mistakes which, in their nature, are purely legal, and which therefore must go for correction to an appellate court.
As for the right to release a part of the judgment in this court, claimed under the 110th section, that is restricted to the two classes of cases embraced by the 109th secJion. It is so restricted by the terms “suchjudgment” therein used. It does riot give the appellee a right to release the illegal one per cent, in this case in the appellate court.
The judgment must be, therefore, reversed with costs, and entered for five per cent, instead of six.

 1 Call, 205.

 1 Rev. Co. 532